

# IN THE
# TENTH COURT OF APPEALS

————————

### No. 10-14-00272-CR

**CHRISTOPHER CAINE DONALDSON,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

————————

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2013-822-C1

## MEMORANDUM OPINION

Appellant Christopher Caine Donaldson entered an open plea of guilty to three counts of aggravated assault against a public servant and one count of credit card abuse. The trial court found him guilty and assessed his punishment at twenty-five years' imprisonment for each aggravated-assault-against-a-public-servant conviction and at two years' confinement in state jail for the credit-card-abuse conviction. The sentences

were ordered to be served concurrently. This appeal ensued. In his sole issue, Donaldson contends that he was denied effective assistance of counsel and a fair trial.

Donaldson raised his claim of ineffective assistance of counsel in a motion for new trial. The trial court held a hearing on the motion, and Donaldson and his father testified in support of the allegations. Donaldson's trial counsel testified and disputed the allegations.

Donaldson testified that he saw his trial counsel at the jail only one time, which was around the time when he was hired to represent him.[1] Other than that, Donaldson only saw his trial counsel at the bond reduction hearing, "whenever we went to sign a plea bargain," on the day he pled guilty, and on the day of sentencing. Donaldson acknowledged that he did see someone from his trial counsel's law firm about three times but stated that he complained about that and then did not see anyone until he went to court.

Donaldson testified that he had other trial counsel before the complained-of trial counsel was hired to represent him. The other counsel told him that the plea offer was fifteen years. The complained-of trial counsel then told him to keep holding out on the plea offer because the State usually gave two or three offers and would come down on the time. His trial counsel called him one day, however, and told him that the State was not going to come down on the time and that he needed to sign the plea agreement.

---

[1] Donaldson was confined at the jail for the entire time that his trial counsel represented him.

Although Donaldson acknowledged on cross-examination that he was aware of the plea offer for almost a year, he stated that he only had that day to consider the plea offer. Donaldson testified that he and his trial counsel came to an agreement to accept the plea offer but that when he went to sign the plea agreement, the State withdrew the offer. Donaldson did not know that there was a time limit on the plea offer. His trial counsel had never discussed a time limit with him. Donaldson stated that if he had known there was a deadline, he would have done something differently.

Donaldson stated that after the plea offer was withdrawn, his trial counsel told him that his "best bet" was to enter an open plea of guilty because the trial court was more than likely going to assess his punishment at less than the plea offer, if not at probation. Donaldson stated that he and his trial counsel both assumed that he was going to get probation because the probation officer who prepared the presentence investigation (PSI) report told him that he was a good candidate for probation because he had never been on felony probation and had successfully completed misdemeanor probation. Donaldson said that he did not really understand what his options were but that he decided to go ahead with the open plea. Donaldson acknowledged on cross-examination that the trial court instructed him as to what his options were at the time of the plea. Donaldson also acknowledged that this was the sixth conviction that he has pled to.

Donaldson testified that he did not talk to his trial counsel about the punishment hearing until the day of the hearing. They had no conference about strategy. They had no discussion about how Donaldson would testify or what other witnesses his trial counsel wanted to call. His trial counsel did not indicate that he had interviewed any witnesses. His trial counsel did tell him that it would be a good idea if Donaldson's mother and father testified for him. Donaldson agreed and told his trial counsel that his parents would do him some good if they testified. His trial counsel did not explain his right to allocution. His trial counsel did not offer to get him clothes for the punishment hearing.

Donaldson testified that he found out when his punishment hearing was scheduled on the day of the punishment hearing. He was expecting his father to testify and never told his trial counsel that it was okay to go on without his father being there. His trial counsel told him, however, that it was the deadline and that he could not postpone. Donaldson stated that his trial counsel told him that he was surprised that there were people there to testify against him. Donaldson said that his trial counsel told him that he could testify if he wanted to but that he did not have to. Donaldson never told his trial counsel that he wanted to testify.

Donaldson's father, Curt, testified that he told Donaldson's trial counsel that he and his wife wanted to testify on his son's behalf, but Curt had to have a liver transplant. Curt stated that, two weeks before the transplant, he told Donaldson's trial counsel the

date that he would be released and tried to get Donaldson's trial counsel to postpone the punishment hearing. Donaldson's trial counsel told Curt that he would try to get the hearing postponed but that he doubted that it would be postponed. Curt also wrote the trial court a letter but got no response. Curt's liver transplant was concluded on the same day as the punishment hearing; therefore, he was unable to testify at the hearing.

Donaldson's trial counsel testified that his phone calls with Donaldson, visits with the family, trips to the jail, and court appearances were numerous. He stated that he would dispute it if the jail records reflected that he had only been to the jail once and said that others from his law firm went to visit with Donaldson as well. He nevertheless did believe that most of his conversations with Donaldson were conducted over the phone. He also talked to Curt on a regular basis either through phone calls or at the office when Curt would visit to check on the status of the case.

Trial counsel testified that the State had made a plea offer before he began representing Donaldson and that he knew Donaldson's former attorney had talked to Donaldson about the plea offer. The plea offer was fifteen years' imprisonment and included a deadly-weapon finding. Trial counsel stated that he discussed the plea offer with Donaldson on multiple occasions. When asked how long he thought that he spent discussing it with Donaldson, he replied that he probably spent several hours discussing it with him. He explained to Donaldson the options available, both trial and plea options, but Donaldson was adamant and clear that he was not going to accept the plea offer.

Trial counsel stated that after discussing the options, Donaldson decided that he did not want to proceed to trial but instead wanted to move forward with an open plea. Trial counsel discussed with Donaldson that the full range of punishment would be available to the judge with an open plea. When asked if he made any predictions to Donaldson of what he thought the trial court would do, trial counsel replied that he did not recall making any specific predictions. They did discuss that the trial court could give Donaldson probation. Trial counsel said that he expected the trial court to consider sentencing Donaldson to less than the plea offer and told that to Donaldson but that he never promised Donaldson an outcome based on the open plea. When Donaldson made his open plea, the trial court admonished Donaldson of the risks. Donaldson signed a waiver of jury trial, stipulation of evidence, and judicial confession that included admonishments. Donaldson also has an extensive criminal history—five convictions—which were all guilty pleas.

Trial counsel testified that he believed that, several days to a week or more before the punishment hearing was held, he discussed with Donaldson the punishment hearing and his strategy for the punishment hearing, which was to inform the trial court that Donaldson took the allegations seriously, that he wanted to seek help and counseling, and that he wanted to see and be with his family because it would be the best encouragement to do better. Trial counsel stated that he expected Donaldson to testify at the punishment hearing. Donaldson had testified before and had done a "fantastic" job;

therefore, trial counsel suggested to Donaldson that he testify at the punishment hearing. Trial counsel said that he discussed Donaldson's testimony with him probably three or four times for at least thirty minutes on each occasion. Trial counsel believed that he was clear to Donaldson that punishment was going to be determined by his testimony. Trial counsel stated that he was clear that the trial court needed to hear from Donaldson what he was willing to do for rehabilitation and that Donaldson voiced no concerns about that. He did not discuss allocution with Donaldson at length.

Trial counsel testified that he and Donaldson also discussed Curt testifying. He knew that Curt wanted to testify, and although Curt was going to have surgery, Curt was tentatively going to be available for the punishment hearing. They later learned that Curt was not going to be available for the punishment hearing, but both Donaldson and Curt wanted to proceed as scheduled. Curt communicated that desire over the phone to trial counsel's office. Trial counsel stated that he did not recall Curt asking him to try to get a continuance. Neither did Donaldson tell him to ask for a continuance so that Curt could testify. Trial counsel stated that after their discussions, he did not think that there was any question that Donaldson and Curt were okay with moving forward with the punishment hearing even though Curt could not be present. Trial counsel stated that there were no other witnesses. He did not have an investigator on Donaldson's case and had not personally talked to anyone who had observed the events. The incident had been videotaped, however, and he had looked at the video. He and Donaldson had also

discussed if there was anyone else who might be a helpful witness, and Donaldson never gave him a list of anyone else he wanted to testify. Donaldson's mother refused to testify, and trial counsel said that he did not think that they needed an expert on the BB gun used in the incident because that had been part of the elements of the offense.

Trial counsel testified that although he did not recall the State giving him official notice, he learned more than twenty-four hours before the punishment hearing that the sheriff and chief deputy were going to testify at the punishment hearing. The sheriff and chief deputy were victims in the case. Trial counsel stated that he was not surprised that the State called the victims to testify at the punishment hearing. He acknowledged that it would have been beneficial to meet with the testifying law enforcement officials before the punishment hearing, but he stated that he had copies of the reports from the law enforcement officials who were victims, except for the sheriff, and that the entire offense had been captured on video. Trial counsel did not ask for a continuance. He cross-examined the witnesses. Trial counsel stated that Donaldson was adamant at the punishment hearing that he did not want to testify, so they moved forward without his testimony. Trial counsel said that the trial court did get to hear what Donaldson had to say, however, through the PSI.

Trial counsel testified that he had no questions about Donaldson's competency. Donaldson asked questions and seemed to completely understand the responses. If not, Donaldson followed up with additional questions. Trial counsel said that there was

never a time when he felt like Donaldson did not understand or was confused about what was happening. Trial counsel stated that Donaldson did hang up on him many times when he called him but that, in the end, he felt like he was adequately communicating with him. In his motion to withdraw, trial counsel stated that he was unable to effectively communicate with Donaldson, but, at the hearing, he explained that he simply meant that he could not effectively communicate with Donaldson about an appeal.

The trial court denied the motion for new trial. We review a trial court's denial of a motion for new trial for an abuse of discretion. *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same). Under *Strickland*, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Wiggins,* 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews,* 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Donaldson asserts that his trial counsel's performance was deficient in the following ways:

- He failed to adequately inform Donaldson of the plea-bargain offer. (Donaldson did not understand the plea offer.)

- He failed to inform Donaldson of the deadline for accepting the plea-bargain offer. (Donaldson did not know that the offer had a deadline.)

- He failed to advise Donaldson accurately concerning whether to accept the plea-bargain offer. (He did not advise Donaldson timely nor did he adequately explain the ramifications of the offer.)

- He failed to fully explain the plea-bargain offer. (He advised Donaldson to hold out longer than he should have and "cost him his plea bargain.")

- He failed to confer adequately with Donaldson, to investigate facts, and to prepare for trial. (He talked to none of the essential witnesses and called none to testify. He also did not go over trial strategy or sufficiently prepare a defense as to at least the weapon finding.)

- He failed to interview or call necessary witnesses. (He made no effort to call Donaldson's father, mother, wife, or his father's friend.)

- He failed to present exculpatory or mitigating evidence. (He made no effort to call Donaldson's father or his father's friend, both of whom could have supplied favorable evidence in mitigation for him.)

- He failed to explain to Donaldson his right of allocution or to prepare Donaldson for allocution. (He did not explain to Donaldson his right of allocution, and he did not fully understand the term. "This deprived [Donaldson] of a very valuable and crucial right.")

- He failed to fully explain the decision of whether to waive a jury. (He did not adequately explain what an open plea to the court is.)

- He failed to request a continuance when he was surprised and it was necessary. (He failed to request a continuance when he discovered that

Donaldson's father could not testify and when he discovered who the State's witnesses were.)

- He gave inadequate explanations of the law and Donaldson's rights. (He failed to prepare Donaldson to testify or to advise him of the applicable law concerning such testimony.)

Donaldson argues that each of these acts or omissions was so serious that it deprived him of a fair trial. He further argues that this is a "clear case of cumulative deficiency."

At a hearing on a motion for new trial, a trial court as finder of fact is free to believe or disbelieve the testimony of any witness, even if the testimony is uncontroverted. *Bell v. State*, 256 S.W.3d 465, 468 (Tex. App.—Waco 2008, no pet.). Here, the trial court was presented with conflicting testimony regarding the allegations. It was therefore within the trial court's discretion to believe trial counsel's testimony and to disbelieve Donaldson's and his father's contrary testimony. *See id.* And, here, trial counsel's testimony supports that his performance was not deficient.

According to trial counsel's testimony, Donaldson was adequately informed about, and trial counsel adequately explained, the plea offer. Donaldson rejected the plea offer. Both trial counsel and the trial court fully explained to Donaldson his options, including waiving his right to a jury trial and entering an open plea of guilty. Donaldson decided to enter an open plea of guilty. The record from the admonishment hearing and Donaldson's plea of guilty also support this testimony.

According to trial counsel's testimony, he advised Donaldson of his rights with regard to testifying. He also prepared Donaldson to testify and made clear to Donaldson

that the trial court needed to hear from him what he was willing to do for rehabilitation. Donaldson nevertheless decided not to testify at the punishment hearing. Trial counsel did not discuss allocution with Donaldson at length. He did not indicate, however, that he did not understand allocution.

According to trial counsel's testimony, he was not surprised by the State's witnesses at the punishment hearing. He had not interviewed them personally, but he had copies of the reports from the law enforcement officials who were victims, except for the sheriff. Also, the entire incident was captured on video. Donaldson and his father were also okay with moving forward with the punishment hearing even though Donaldson's father could not testify. Trial counsel did not therefore deem it necessary to request a continuance. Trial counsel also did not believe it was necessary to call Donaldson's father, mother, wife, or his father's friend to testify at the punishment hearing. He and Donaldson had discussed if there was anyone else who might be a helpful witness, and Donaldson never gave him a list of anyone else he wanted to testify. Donaldson's mother refused to testify. Trial counsel did not think that they needed an expert on the BB gun used in the incident because that had been part of the elements of the offense. Furthermore, as illustrated in the cross-examination of Donaldson's father during the motion-for-new-trial hearing, his testimony would have been duplicative of what was in the psychological evaluation that was already before the trial court at the punishment hearing.

In light of the foregoing, we conclude that Donaldson did not meet his burden of showing by a preponderance of the evidence that his trial counsel's representation was deficient. *See Wiggins,* 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews,* 159 S.W.3d at 101. The only alleged deficiency for which trial counsel *might* not have provided a reasonable explanation was his discussion of allocution with Donaldson, but there is nothing in the record to reflect any harm from this alleged deficiency. In fact, after the trial court sentenced Donaldson, Donaldson asked if he could say something and then stated, "I just want to apologize to everybody that is involved in this situation. Mr. McNamara, Mr. Cawthon, I want to apologize for making you feel threatened. I'm sorry to everybody." And at the end of the hearing on Donaldson's motion for new trial, the trial court stated:

> All right. Look, when I did this originally, I had nearly all of this information before me in one form or another. I was fully aware of the facts of the circumstances. I had the presentence investigation. I had the psychological evaluation. And I'll be honest with you, that wasn't the only consideration thing I took into consideration. You read that psychological evaluation, it is actually chilling. I think it presented a true picture of the circumstances that we are dealing with. Cut to the chase, I'm denying the motion for new trial. And I'd be - - I don't think you really want a new trial anyway. I think if a jury had considered these circumstances and this fact situation, including everything that I've heard today, I think they'd given you life. And I think they'd done it very quickly. I am not - - I realize in a situation like this it's always significant collateral damage to families who are totally innocent, but I can't help that. But I can protect the public. I could have given him life myself, and then he'd be looking at doing thirty years flat instead of twelve and a half. So the motion is denied.

We conclude that the trial court did not abuse its discretion in concluding that Donaldson received effective assistance of counsel and in denying his motion for new trial. We overrule Donaldson's sole issue and affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed July 20, 2016
Do not publish
[CRPM]

